UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM C. LINDSAY and LINDSAY,
RAPPAPORT & POSTEL, LLC,
    *Plaintiffs,*
vs.    Case No.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
KATHLEEN SEBELIUS, in her official capacity
as the Secretary of the United States Department of
Health and Human Services; UNITED STATES
DEPARTMENT OF THE TREASURY; NEAL
WOLIN, in his official capacity as the Acting
Secretary of the United States Department of the
Treasury; UNITED STATES DEPARTMENT OF
LABOR; and SETH D. HARRIS, in his official
capacity as Acting Secretary of the United States
Department of Labor,
    *Defendants.*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, William C. Lindsay, and Lindsay, Rappaport & Postel, LLC, by and through their attorneys, bring this complaint against Defendants, United States Department of Health and Human Services, Kathleen Sebelius, United States Department of the Treasury, Neal Wolin, United States Department of Labor, and Seth D. Harris, and their successors in office and in support thereof allege the following on information and belief:

## INTRODUCTION

1.     Plaintiffs seek judicial review concerning Defendants' violations of constitutional and statutory provisions in connection with Defendants' promulgation and implementation of certain regulations adopted under the Patient Protection and Affordable Care Act of 2010 (hereafter "Affordable Care Act"), specifically those regulations mandating that non-exempt employers pay for, as part of employee health benefit plans, certain goods and services,

regardless of whether paying for such goods and services violates the employer's religious and moral values.

2. Plaintiffs ask this Court for declaratory and injunctive relief from the operation of a rule promulgated by Defendants in or about February 2012 mandating that employee health benefit plans include coverage, without cost-sharing, for "all Food and Drug Administration-approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity" in plan years beginning on or after August 1, 2012, (hereafter "the Mandate"). 45 CFR § 147.130(a)(1)(iv), as confirmed at 77 Fed. Reg. 8725 (Feb. 15, 2012), adopting and quoting Guidelines issued by the Health Resources and Services Administration (hereafter "HRSA") found at http://www.hrsa.gov/womensguidelines.

3. Plaintiff, William C. Lindsay ("Lindsay"), is an adherent of the Catholic faith. Lindsay owns the controlling interest in Plaintiff, Lindsay, Rappaport & Postel, LLC ("LR&P"), and wishes to conduct the business of LR&P in a manner that does not violate his religious faith.

4. Lindsay has concluded that complying with the Mandate would require him to violate his religious beliefs because the Mandate requires him and/or LR&P to pay for, and provide, not only contraception and sterilization, but also abortion, because certain drugs and devices that Lindsay has concluded have abortion-causing mechanisms of action, such as the "morning-after pill," "Plan B," and "Ella," come within the Mandate's and HRSA's definition of "Food and Drug Administration-approved contraceptive methods."

5. Plaintiffs contend that the Mandate directly pressures them to either (1) comply with the Mandate and violate their religious beliefs and moral values or (2) incur ruinous fines and penalties if they choose to continue to conduct their business consistent with their religious

2

beliefs and moral values. Accordingly, Plaintiffs contend that the Mandate violates their rights under the Religious Freedom Restoration Act and the First Amendment, and also violates the Administrative Procedure Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346(a)(2) because it is a civil action against agencies and officials of the United States based on claims arising under the Constitution, laws of the United States, and regulations of executive departments and it seeks equitable or other relief under an Act of Congress, and also pursuant to 28 U.S.C. § 1361 as this Court may compel officers and agencies of the United States to perform a duty owed Plaintiffs.

7. This Court has jurisdiction to render declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 2000bb-1, and Federal Rules of Civil Procedure 57 and 65.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e)(1)(B)-(C) because Plaintiffs reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

9. This Court has the authority to award Plaintiffs their costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

## PLAINTIFFS

10. Plaintiff, William C. Lindsay, is an individual and citizen of the State of Illinois and the United States.

11. Lindsay owns the controlling interest in Plaintiff, Lindsay, Rappaport & Postel, LLC, and is its managing partner.

12. Lindsay and the other name partners of LR&P, Stuart Rappaport and Joseph Postel, set the policies governing the conduct of all phases of LR&P. In the event the name partners cannot reach a consensus, the decision of Lindsay controls as the partner who owns the controlling interest in LR&P. Partner Joseph Postel is also an adherent of the Catholic faith and shares the same objections to the Mandate as Lindsay.

13. LR&P is a law firm that primarily practices in insurance defense, insurance coverage, and appellate work, serving clients in the Chicago area and throughout Illinois for over ten years. Its main offices are located at 10 South LaSalle Street, Chicago, Illinois, which is in Cook County and 221 North West Street, Waukegan, Illinois, which is in Lake County. It is incorporated under the laws of the State of Illinois.

## DEFENDANTS

14. Defendant, United States Department of Health and Human Services (hereafter "HHS"), is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

15. Defendant, Kathleen Sebelius, is Secretary of HHS and is named as a party only in her official capacity.

16. Defendant, United States Department of the Treasury, is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

17. Defendant, Neal Wolin, is Acting Secretary of the Treasury and is named as a party only in his official capacity.

18. Defendant, United States Department of Labor (hereafter "DOL"), is an agency of the United States and is responsible for the administration and enforcement of the Mandate.

19. Defendant, Seth D. Harris, is Acting Secretary of DOL and is named as a party only in his official capacity.

## FACTUAL ALLEGATIONS

20. Plaintiff Lindsay is a Catholic. In furtherance of his Catholic faith, Lindsay, along with his wife, Suzanne, strongly supports, financially and otherwise, Catholic organizations, including, but not limited to, his local Parish, St. Mary of the Annunciation, Food for the Poor, Catholic Charities, Holy Family Food Pantry, Catholic Relief Services, St. Mary of the Lake Mundelein Seminary, Mercy Home for Boys and Girls, Christian Foundation for Children and Aging, and Archdiocese of Chicago Annual Catholic Appeal. He also supports, financially and otherwise, pro-life organizations, including Lake County Right to Life, the Women's Center for Greater Chicagoland, and Students for Life. Also, through their church ministries, the Lindsays volunteer and financially support Public Aid to Deliver Shelter, Facilitating Open Couple Communication, Understanding & Study, St. Vincent De Paul and its Thrift Store, and Blessed Trinity Church.

21. Lindsay seeks to manage and operate LR&P in a way that reflects the teachings, mission, and values of his Catholic faith.

22. Lindsay adheres to the Catholic Church's teachings regarding the immorality of abortion, artificial means of contraception, and sterilization.

23. Lindsay believes that it is not only sinful for him to engage in such practices, but it is also sinful for him, whether acting individually or through his law firm, to directly pay for, facilitate, or otherwise encourage other people to do so by purchasing coverage for contraception, sterilization, and abortion-inducing drugs as part of an employee health plan. In other words, direct subsidization of immoral goods or services is itself an immoral act that Lindsay's faith forbids, regardless of whether those goods or services are ever utilized by others.

Lindsay has established ethical guidelines for his law firm setting forth these beliefs.

24. The Mandate requires Plaintiffs to directly pay for and provide such goods and services by requiring that they be added to any group health plan established or renewed after August 1, 2012.

25. LR&P currently has about seventeen full-time employees and provides a group health insurance plan for its full-time employees.

26. The annual renewal date of the company's group health plan for its full-time employees is April 1.

27. Like other non-cash benefits provided by LR&P, Plaintiffs consider the provision of employee health insurance an integral component of furthering the company's mission and values. Being forced to cease providing group health coverage to LR&P's employees (which Plaintiffs have no intention of doing) would harm both Plaintiffs and their employees.

28. Lindsay believes that he and his law firm should not be put to the choice of either ceasing to provide group health care for the firm's employees or paying for and providing health care coverage that includes contraceptives, sterilization, abortion-inducing drugs, or related education and counseling, in violation of his religious beliefs and the firm's ethical guidelines.

## APPLICABLE PROVISIONS OF THE MANDATE

29. Under the Mandate being challenged herein, non-exempt employers, such as LR&P, that provide health insurance coverage for their full-time employees are required to include coverage for all FDA-approved contraceptive methods, sterilization, and related education and counseling.

30. The Mandate went into effect on August 1, 2012, and applies to the first health

6

insurance plan-year starting after August 1, 2012.

31.    The group health plan for LR&P's employees is due for renewal on April 1, 2013. In or about August 2012, Plaintiffs' insurance agent advised upon inquiry that LR&P's current group health plan excludes coverage for contraceptives and sterilization. In January 2013, however, Plaintiffs' insurance agent advised that he was mistaken and that LR&P's current group health plan includes coverage for contraceptives, sterilization, and abortion. This was an error contrary to Lindsay's religious beliefs and contrary to LR&P's ethical guidelines. The company is investigating ways to obtain employee health insurance coverage that complies with Lindsay's Catholic faith and the company's ethical guidelines.[1]

32.    Plaintiffs wish to renew health insurance coverage for their full-time employees while, at the same time, excluding coverage for all FDA-approved contraceptive methods, abortion-inducing drugs, sterilization procedures, and patient education and counseling regarding such products and procedures.

33.    Under the terms of the Mandate, Plaintiffs will not be permitted to obtain coverage that excludes the aforementioned drugs and services. On the contrary, the Mandate will require that Plaintiffs continue to pay for and provide coverage of those drugs and services.

34.    Plaintiffs, as for-profit employers, do not qualify for the Mandate's "religious employer" exemption. *See* 45 CFR § 147.130(a)(1)(A) and (B).

---

[1] The State of Illinois requires coverage for outpatient contraceptive services and drugs in individual and group health insurance policies. 215 Ill. Comp. Stat. § 5/356z.4. Yet, the Illinois Health Care Right of Conscience Act, 745 Ill. Comp. Stat. § 70/1, *et seq.*, provides "health care payers," 745 Ill. Comp. Stat. § 70/3(f), such as Plaintiffs, with an exemption from having to pay for, or having to arrange for the payment of, any health care services, including "family planning, counseling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; medication; or surgery or other care or treatment," 745 Ill. Comp. Stat. § 70/3(a), that violates the health care payer's conscience as documented in its ethical guidelines or the like, 745 Ill. Comp. Stat. §§ 70/2, 70/3(e), 70/11.2.

35. Because Plaintiffs do not qualify for the "religious employer" exemption, they are not permitted to take advantage of the "temporary enforcement safe-harbor" provision established by Defendants. *See* 77 Fed. Reg. 8725 (Feb. 15, 2012).

36. Health insurance plans in existence as of the enactment of the Affordable Care Act (March 23, 2010) that do not include coverage for all FDA-approved contraceptive methods, sterilization, and related education and counseling and that have not since been materially changed are considered "grandfathered" plans that do not have to comply with the Mandate. According to the Defendants' own estimates, 98 million employees are currently enrolled in "grandfathered" plans that are not subject to the Mandate.

37. The Mandate coerces Plaintiffs to abandon integral components of their religiously inspired mission and values.

38. Failure to comply with the Mandate would likely require LR&P to pay ruinous annual fines and penalties to the federal government. Under 26 U.S.C. § 4980D, Plaintiffs would likely face over $620,000 in penalties for each year that they provide an insurance plan for their approximately seventeen full-time employees that does not cover the goods and services that Plaintiffs' faith forbids them from directly subsidizing.

39. The Mandate pressures Plaintiffs into choosing between complying with the Mandate's requirements in violation of their religious beliefs and moral values or paying ruinous fines that would have a crippling impact on their ability to survive economically. The Mandate, therefore, imposes a substantial burden on Plaintiffs' religious exercise.

40. Any alleged interest Defendants have in providing free FDA-approved contraceptives, abortifacients, and sterilization and related education and counseling services, without cost-sharing, is not compelling as applied to Plaintiffs. In addition, any such interest

8

could be advanced by Defendants through other more narrowly tailored means that do not require Plaintiffs to pay for and otherwise support coverage of such items through their employee health plan in violation of their religious beliefs and moral values.

41. Plaintiffs lack an adequate or available administrative remedy or, in the alternative, any effort to obtain an administrative remedy would be futile.

42. Plaintiffs lack an adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### (Violation of the Religious Freedom Restoration Act)

43. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 42 above and incorporate those allegations herein by reference.

44. Plaintiffs have sincerely held religious beliefs that forbid them from arranging for, paying for, or providing coverage for "all FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling related to such procedures."

45. The Mandate, by requiring Plaintiffs to pay for or provide said coverage, imposes a substantial burden on Plaintiffs' free exercise of religion by coercing Plaintiffs to choose between conducting their business in violation of their religious beliefs and moral values or paying substantial penalties to the government.

46. The Mandate furthers no compelling governmental interest, nor is it necessary to prevent any concrete harm to such an interest.

47. The Mandate is not narrowly tailored to furthering any compelling interest.

48. The Mandate is not the least restrictive means of furthering the Defendants' stated interests.

49. The Mandate and Defendants' threatened enforcement of the Mandate violates

9

rights secured to Plaintiffs by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*.

50. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their request for relief.

### COUNT II

### (Violation of the Federal Free Exercise Clause)

51. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 50 above and incorporate those allegations herein by reference.

52. Plaintiffs have sincerely held religious beliefs that forbid them from arranging for, paying for, or providing coverage for "all FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling related to such procedures."

53. The Mandate, by requiring Plaintiffs to pay for or provide said coverage, imposes a substantial burden on Plaintiffs' free exercise of religion by coercing Plaintiffs to choose between conducting their business in violation of their religious beliefs and moral values or paying substantial penalties to the government.

54. The Mandate furthers no compelling governmental interest, nor is it necessary to prevent any concrete harm to such an interest.

55. The Mandate is not narrowly tailored to furthering any compelling interest.

56. The Mandate is not the least restrictive means of furthering the Defendants' stated interests.

57. The Mandate is neither neutral nor generally applicable.

58. The Mandate and Defendants' threatened enforcement of the Mandate violates Plaintiffs' rights to free exercise of religion as guaranteed by the First Amendment to the United

States Constitution.

59. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their Request for Relief.

## COUNT III

### (Violation of the Federal Free Speech Clause)

60. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 59 above and incorporate those allegations herein by reference.

61. The First Amendment protects organizations as well as individuals from being compelled to speak and, in many circumstances, from being compelled to subsidize the speech of others.

62. Expenditures of money are a form of protected speech.

63. The Mandate compels Plaintiffs to pay for or provide coverage for education and counseling related to contraception, abortion, and sterilization, which is speech to which Plaintiffs morally object.

64. Plaintiffs believe that the aforementioned services, activities, and practices covered by the Mandate are contrary to their sincerely-held religious beliefs.

65. The Mandate compels Plaintiffs to subsidize goods, services, activities, practices, and speech that Plaintiffs believe to be immoral and, thereby, violates Plaintiffs' right to be free from governmental compulsion to utter, subsidize, or support speech with which Plaintiffs disagree on religious and moral grounds.

66. The Mandate and Defendants' threatened enforcement of the Mandate violates Plaintiffs' free speech rights as guaranteed by the First Amendment to the United States Constitution.

67. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their request for relief.

## COUNT IV
### (Violation of the Administrative Procedure Act)

68. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 67 above and incorporate those allegations herein by reference.

69. The Affordable Care Act expressly delegates to the HRSA, an agency within Defendant United States Department of Health and Human Services, the authority to establish "preventive care" guidelines that a group health plan and health insurance issuer must provide.

70. Given this express delegation, Defendants were obliged to engage in formal notice and comment rulemaking as prescribed by law before Defendants issued the guidelines to which group health plans and insurers must conform. *See* 5 U.S.C. § 553.

71. Proposed regulations were required to be published in the Federal Register and interested persons were required to be given a chance to take part in the rulemaking through the submission of written data, views, or arguments.

72. Defendants promulgated the "preventive care" guidelines without engaging in the formal notice and comment rulemaking as prescribed by law. Defendants delegated the responsibilities for issuing "preventive care" guidelines to a non-governmental entity, the Institute of Medicine, which did not permit or provide for broad public comment otherwise required by the Administrative Procedure Act.

73. Defendants also failed to engage in the required notice and comment rulemaking when Defendants issued the interim final rules and the final rule that incorporates the "preventive care" guidelines.

74. The Mandate violates Section 1303(b)(1)(A) of the Affordable Care Act, which

12

provides that "nothing in this title . . . shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year." 42 U.S.C.A. § 18023(b)(1)(A)(i) (codification of Section 1303 of the Affordable Care Act).

75. The Mandate violates the Religious Freedom Restoration Act as set forth in this complaint.

76. The Mandate violates the First Amendment to the United States Constitution as set forth in this complaint.

77. Defendants, in promulgating the Mandate, failed to consider the constitutional and statutory implications of the Mandate for for-profit employers such as Plaintiffs.

78. The Mandate and Defendants' actions are arbitrary and capricious, not in accordance with law or required procedure, and contrary to constitutional right, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

79. Absent injunctive and declaratory relief against the Mandate, Plaintiffs will suffer irreparable harm, and they request the relief set forth below in their request for relief.

## REQUEST FOR RELIEF

80. Plaintiffs repeat and re-allege all allegations made above and incorporate those allegations herein by reference, and Plaintiffs request that this Court grant them the following relief and enter final judgment against Defendants and in favor of Plaintiffs:

A. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Religious Freedom Restoration Act;

B. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Free Exercise Clause of the First Amendment to the

United States Constitution;

C. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Free Speech Clause of the First Amendment to the United States Constitution;

D. Enter a declaratory judgment that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Administrative Procedure Act;

E. Enter preliminary and permanent injunctions prohibiting Defendants, their officers, agents, servants, employees, successors in office, attorneys, and those acting in active concert or participation with them, including any insurance carriers or third party plan administrators, from applying and enforcing the Mandate and any related regulations, rules, statutes, laws, penalties, fines or assessments against Plaintiffs; and prohibiting Defendants, their officers, agents, servants, employees, successors in office, attorneys, and those acting in active concert or participation with them from applying and enforcing the Mandate against any insurance carriers or third party plan administrators with whom Plaintiffs may seek to contract with respect to the provision or administration of an employee health plan for Plaintiffs' employees;

F. Award Plaintiffs their costs and attorney's fees associated with this action; and

G. Award Plaintiffs any further relief this court deems equitable and just.

Dated this 14th day of February, 2013

| | |
|---|---|
| Edward L. White III<br>American Center for Law & Justice<br>5068 Plymouth Rd.<br>Ann Arbor, MI 48105<br>Tel: (734) 662-2984; Fax: (734) 302-1758<br>ewhite@aclj.org<br><br>Erik M. Zimmerman*<br>American Center for Law & Justice<br>1000 Regent University Drive<br>Virginia Beach, Virginia 23464<br>Tel. (757) 226-2489; Fax. (757) 226-2836<br>ezimmerman@aclj.org | */s/ Francis J. Manion*<br>Francis J. Manion<br>Geoffrey R. Surtees<br>American Center for Law & Justice<br>PO Box 60<br>New Hope, KY 40052<br>Tel: (502) 549-7020; Fax: (502) 549-5252<br>fmanion@aclj.org, gsurtees@aclj.org<br><br>Carly Gammill*<br>American Center for Law & Justice<br>188 Front St., Ste. 116-19<br>Franklin, TN 37064<br>Tel. (615) 415-4822; Fax: (615) 599-5189<br>cgammill@aclj-dc.org<br><br>*Admission pending |